UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL R. BASILE,

                    Petitioner,

vs.                               Case No.  2:04-cv-454-FtM-29DNF

WALTER A MCNEIL,[1] Secretary Florida
Department of Corrections

                    Respondent.
_____

## OPINION AND ORDER

### I. Status

Petitioner Michael R. Basile (hereinafter "Petitioner" or "Basile") initiated this action with the assistance of counsel by filing a Petition for Writ of Habeas Corpus ("Petition," Doc. #1) pursuant to 28 U.S.C. § 2254 on September 10, 2004, and a supporting memorandum of law ("MOL," Doc. #5) on September 20, 2004. Basile challenges his state court judgment of conviction for manslaughter with a firearm, entered in the Twentieth Judicial Circuit, Lee County, Florida on December 16, 1999. Petition at 1. Respondent filed a Response (Doc. #20, Response) on February 1, 2005, attaching exhibits including Petitioner's post-conviction

_____

[1]Walter A. McNeil, the current Secretary of the Florida Department of Corrections, is substituted as the proper party Respondent for James R. McDonough, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

motions and the transcripts from Petitioner's state court proceedings.  See Doc. #21, Exhs. #1-#19 (not scanned on docket). Petitioner filed a Reply (Doc. #25, Reply) on May 30, 2006.  This matter is ripe for review.

## II. Procedural History

Petitioner was charged with second-degree murder with a firearm on October 20, 1997.  Exh. 1.  The jury found Petitioner guilty of a lesser-included offense of manslaughter with a firearm. Petitioner was sentenced to 148 months in prison on December 16, 1999.

Petitioner filed a direct appeal on May 12, 2000, raising four issues: (1) the verdict is contrary to the law and the weight of the evidence and there is insufficient competent evidence to support the conviction as a matter of law; (2) the trial court erred in failing to grant a mistrial when the state's primary witness testified he had taken a polygraph; (3) the trial court erred in failing to grant a mistrial when an officer testified that an unrelated outstanding warrant for appellant's arrest existed; and (4) the trial court erred by failing to give a requested instruction on a lesser offense of using a firearm while under the influence of alcohol.  Exh. 5.  The State filed a response brief. Exh. 6.  Petitioner filed a reply brief.  Exh. 7.  The appellate court *per curiam* affirmed the trial court on December 13, 2000, and mandate issued January 3, 2001.  MOL at 3; mandate at Exh. 8.

On December 12, 2001, Petitioner, through counsel, filed a motion pursuant to Florida Rule of Criminal Procedure 3.850, Exh. 9, with the trial court raising the following four grounds of ineffectiveness of trial counsel: (1) trial counsel was ineffective in failing to object to the jury instruction of manslaughter with a firearm as a lesser-included offense of second-degree murder with a firearm; (2) trial counsel was ineffective for failing to communicate the plea deal with Petitioner; (3) trial counsel was ineffective for failing to request a jury instruction regarding Petitioner's use of Xanax and Effexor XR, prescribed psychotropic medication, during trial; and (4) trial counsel was ineffective for failing to move the trial court for a downward departure from the sentencing guidelines. Exh. 9 at 5-7. The State filed a response. Exh. 10. On November 18, 2002, the trial court held an evidentiary hearing on the four grounds. Exh. 11. After the evidentiary hearing, the trial court entered an order denying Petitioner's motion. Exh. 12.

Petitioner appealed the trial court's denial, including an additional claim of trial court error arising out of the evidentiary hearing. Exh. 13. The State filed an response brief. Exh. 14. Petitioner filed a reply. Exh. 15. On October 15, 2003, the appellate court *per curiam* affirmed the trial court's decision. Exh. 16. Petitioner then filed a motion for a re-hearing, Exh. 17, which the appellate court denied, Exh. 18. Mandate issued on May

27, 2004.  Exh. 19.  On September 10, 2004, Petitioner filed his federal Petition for Writ of Habeas Corpus.[2]

### III.  Applicable § 2254 Law

Basile filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Consequently, post-AEDPA law governs this action.  Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007);  Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Under AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.'  Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)."  Stewart v. Sec. Dept. of Corrections, 476 F.3d 1193, 1208 (11th Cir. 2007).  See also Parker v. Sec. Dept. of Corrections, 331 F.3d 764 (11th Cir. 2003).  AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002). Prior to the Court reviewing a claim on the merits, certain aspects of the AEDPA, are relevant to this matter.

---

[2]The AEDPA imposes a one-year statute of limitations on § 2254 actions.  28 U.S.C. § 2244(d).  Respondent concedes that due to Petitioner's collateral appeals, the Petition in this Court was timely filed.  Response at 8.  The Court agrees.

## A.   Evidentiary Hearing

Petitioner was afforded an evidentiary hearing on his Rule 3.850 motion by the trial court. Exh. 11. The Court finds that petitioner is not entitled to an evidentiary hearing in this federal habeas. 28 U.S.C. § 2254(e); Schriro v. Landrigan, 127 S. Ct. 1933, 1940 (2007); Bradshaw v. Richey, 126 S. Ct. 602, 605-06 (2005); Holland v. Jackson, 542 U.S. 649, 652-53 (2004). (citation omitted).

## B.   Federal Question

A federal court may entertain an application for a writ of habeas corpus from a state prisoner who claims his custody violates the "Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a). Questions of state law are generally insufficient to warrant review or relief by a federal court under § 2254. Estelle v. McGuire, 502 U.S. 62, 68 (1991); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000). Questions of state law are only reviewed to determine whether the alleged errors rendered "the entire trial fundamentally unfair." Carrizales, 699 F.2d at 1055.

## C.   Deference to State Decision

Where a petitioner's claim raises a federal question that was adjudicated on the merits in the state courts, the federal court must afford a high level of deference to the state court's

decision.  See, e.g., Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson, 527 F.3d at 1146; Wright v. Sec. Dept. of Corrections, 278 F.3d 1245, 1253-54 (11th Cir. 2002).  See also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.  Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 653 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state court's conclusion is contrary to, or

-6-

constitutes an unreasonable application of, "clearly established Federal law." <u>Wright v. Van Patten</u>, 128 S. Ct. 743, 747 (2008); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 15-16 (2003).

A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. <u>Brown</u>, 544 U.S. at 141; <u>Mitchell</u>, 540 U.S. at 15-16. Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them." <u>Early v. Parker</u>, 537 U.S. 3, 8 (2002); <u>Mitchell</u>, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, <u>Brown</u>, 544 U.S. at 134; <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000), <u>cert. denied</u>, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting

-7-

Williams, 120 S. Ct. at 1520).  The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18.  Depending upon the legal principle at issue, there can be a range of reasonable applications.  Yarborough v. Alvarado, 541 U.S. 652, 663-64 (2004).  Thus, the state court's decision is not subject to federal review *de novo*; rather, § 2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard.  Id. at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d)(2).  Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question.  Rice v. Collins, 546 U.S. 333, 338 (2006).  Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240 (2005); Henderson, 353 F.3d at 890-91.  This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact."  Parker

-8-

v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001) (citation omitted).  An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed *de novo*. Rolling v. Crosby, 438 F.3d 1296, 1299 (11th Cir.), cert. denied sub nom. Rolling v. McDonough, 126 S. Ct. 2943 (2006).

### IV. Federal Petition for Writ of Habeas Corpus

**Ground One**

The Petition raises four grounds of ineffectiveness of trial counsel.  Petitioner argues that trial counsel rendered ineffective assistance by failing to: (a) object to the inclusion of the offense of manslaughter with a firearm as a lesser-included offense of second-degree murder; (b) request a jury instruction informing the jury that Petitioner was being administered psychotropic medication throughout the trial; (c) communicate a plea offer to Petitioner prior to trial; and (d) move the trial court for a downward departure of the sentencing guidelines.  Petition at 5-7; MOL at 30-36.  As discussed under the procedural history section of this Order, Petitioner raised these claims in his Rule 3.850 motion and the trial court held an evidentiary hearing.  After the evidentiary hearing, the trial court denied Petitioner's motion.

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).  Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008).  Post-AEDPA, the standard set

forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. Newland, 527 F.3d at 1184. In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688. Petitioner bears a heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom. Jones v. Allen, 127 S. Ct. 619 (2006). A Court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.

Id.  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied sub nom. Ladd v. Burton, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

**A.  Trial counsel rendered ineffective assistance for failing to object to the inclusion of the jury instruction on the offense of manslaughter with a firearm as a lesser-included offense of second-degree murder**

Petitioner argues that trial counsel rendered ineffective assistance by failing to object to the inclusion of manslaughter with a firearm on the jury instructions because the element of intent was not alleged in the Information.  Petitioner at 6; MOL at 20.  In pertinent part, Petitioner argues that an amendment to the Information violates the accused's right to be tried only on those charges included by the grand jury on the Information.  MOL at 20. Thus, the jury instructions allowed the jury to convict Petitioner

for a reason other than that specifically alleged in the Information. Id. at 22. Petitioner argues that he was prejudiced as a result of his counsel's deficient performance because either the trial court would not have given the jury the manslaughter instruction or had it been preserved for appellate review, the appellate court would have reversed the manslaughter conviction on direct appeal and granted a new trial. Id. at 23. Petitioner argues that trial counsel's failure to object in this instance amounted to a violation of Strickland. See generally id. at 20-23.

    In Response, Respondent argues that trial "[c]ounsel cannot be deemed ineffective for failing to object to an instruction was that appropriate based on the law and the evidence." Petition at 12. Respondent further argues that "a general verdict need not be reversed where the general verdict could have rested upon a theory of liability without adequate evidentiary support when there was an alternative theory of guilt for which the evidence was sufficient. Id. (citing Griffin v. United States, 502 U.S. 46 (1991)). Lastly, Respondent argues the trial court's decision to deny Petitioner's 3.850 motion on this ground because counsel's decision was a matter of trial strategy was correctly determined by the trial court. Id. at 13. Respondent argues that Petitioner has not presented clear and convincing evidence that the trial court's decision was in violation of federal law, or an unreasonable determination based on the facts. Id. In Reply, Petitioner maintains that trial counsel's failure to object to the jury instruction on culpable

negligence manslaughter as a lesser-included offense to second-
degree murder amounted to ineffective assistance.  Reply at 1-5.
Petitioner refers to the Florida Supreme Court's standard jury
instructions in criminal cases adopted in 1981, arguing that
neither of the two types of lesser-included offenses adopted by the
court support the instruction on culpable negligence manslaughter,
and, as such, trial counsel had an affirmative obligation to
object.  Id. at 4.

This Court agrees with Respondent and finds that the trial
court's decision was neither contrary to nor an unreasonable
application of federal law, and the decision was not unreasonable
in light of the facts presented.  After conclusion of the trial
court's evidentiary hearing on Petitioner's Rule 3.850 motion, the
trial court entered an order denying Petitioner relief on this
ground, stating:

> [T]he Court finds that the decision to allow jury
> instructions on both second degree murder and
> manslaughter was a matter of trial strategy.  Both trial
> attorneys were of the opinion that an "all-or-nothing"
> defense would have been too risky and not a good
> strategy.  Even though Defendant denied that trial
> strategy had been discussed with him, he did not indicate
> that he would have objected or disagreed with this
> strategy, and no evidence was offered to suggest that
> this strategy was unreasonable.

Exh. 11 at 785.  The appellate court *per curiam* affirmed the trial
court.  Exh. 16.

"In evaluating counsel's performance, [the federal court]
'always avoid[s] second guessing with the benefit of hindsight' and

'allow[s] lawyers broad discretion to represent their clients by pursuing their own strategy.'" <u>Fugate v. Head</u>, 261 F.3d 1206, 1223-1224 (11th Cir. 2001)(citing <u>White v. Singletary</u>, 972 F.2d 1218, 1220, 1221 (11th Cir. 1992)).  Petitioner was represented by two privately retained defense attorneys throughout the course of his trial.  Exh. 11 at 672-673.  Defense counsel <u>requested</u> the trial court to instruct the jury on second-degree murder's lesser-included offense of manslaughter.  Exh. 2 at 436, 440, 442 (defense counsel Zenobi[3] stating "[w]e have requested the statute that I cited as a lesser.").  The trial court permitted jury instructions on the lesser-included offenses; and, as such, the jury was instructed on second-degree murder with a firearm and the lesser-included offenses of second-degree murder without a firearm, and manslaughter with and without a firearm.  Exh. 2 at 498.

The Court finds that defense counsels' strategic decision to request jury instructions on the lesser-included offense of manslaughter did not amount to deficient performance.  <u>See</u> <u>McNeal v. Wainwright</u>, 722 F.2d 674, 676 (11th Cir. 1984)(citations omitted)(stating "Counsel will not be deemed unconstitutionally deficient because of a tactical decision.").  Further, Petitioner cannot establish that no other reasonable attorney would not have objected to the instruction on the lesser-included offenses as both defense attorneys determined it was "good" trial strategy.  <u>See,</u>

---

[3]The transcript spells co-defense counsel's name two different ways: Zenobi and Sinoby.

e.g., Exh. 11 at 690 (defense counsel Ahlbrand stating that it
would have been "bad strategy" to have the jury instructed only on
second-degree murder "because it would have exposed [Petitioner]
to, if convicted, a life sentence or at least a significant term of
years that would have approached the functional life equivalent.");
Id. at 712 (defense counsel Sinoby stating "I, too, felt like
Second degree or nothing was so chancy that it was not conducive to
what I would consider a good tactical decision).

To the extent Petitioner refers the Court to Florida's model
jury instructions and argues that manslaughter is not a lesser-
included offense of second-degree murder, a jury instruction that
was allegedly incorrect under state law is not a basis for federal
habeas relief because federal relief is limited to deciding whether
a conviction violated federal law.  Federal courts on habeas review
are constrained to determine only whether the challenged
instruction, viewed in the context of both the entire charge and
the trial record, "'so infected the entire trial that the resulting
conviction violate[d] due process.'"  Jamerson v. Sec. Dept. of
Corrections, 410 F.2d 682 F.3d 682 (11th Cir. 2005).  If the jury
instructions correctly stated the law, then they did not deprive a
petitioner of due process.  See Estelle v. McGuire, 502 U.S. 62, 72
(1991); see also Oliva v. McDonough, Case No. 8:05-cv-246, 2008 WL
450030 *3 (M.D. Fla. 2008)(ruling on an issue identical to the one
sub judice and finding "defense counsel is not deficient for
failing to object to a standard jury instruction that has not been

-15-

invalidated by the Florida Supreme Court."); <u>Rayl v. State</u>, 891 So. 2d 1052, 1055-1056 (Fla. 2d DCA 2004)(noting that pursuant to Florida law manslaughter is a lesser-included offense to second-degree murder). Thus, Petitioner cannot demonstrate that trial counsels' performance was deficient because counsel had no basis to object to the jury instruction on the lesser-included offense of manslaughter. In fact, due process required that a lesser-included offense instruction be given to the jury when the evidence warrants such an instruction. See <u>Hopper v. Evans</u>, 456 U.S. 605 (1982). The federal rule is that a lesser included offense instruction should be given "if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater." <u>Id.</u> at 612 (citing <u>Keeble v. United States</u>, 412 U.S. 205, 208 (1973)). Here, evidence was presented during the course of the trial that required the jury be instructed on the lesser-included offense of manslaughter. See Response at 12 (noting, for example, that one witness testified that "Petitioner was 'messing around' and continuously pointing a gun at the victim."). Based on the foregoing, Petitioner is not entitled to federal relief on this claim.

**B. Trial counsel rendered ineffective assistance in failing to request a jury instruction informing the jury that Petitioner was being administered psychotropic medication throughout the trial**

Petitioner argues that trial counsel was ineffective for failing to request a jury instruction regarding his use of

"psychotropic" medicine during the course of the trial pursuant to
Rule 3.125(c)(2), Florida Rules of Criminal Procedure. Petition at
6-7; MOL at 23. Petitioner asserts that the evidence presented at
the evidentiary hearing was undisputed that Petitioner was taking
the mediation due to "his severe mental illness" and "evidence was
undisputed that the defense attorneys were aware that Petitioner
Basile was taking psychotropic medication." Petition at 6. Thus,
Petitioner argues that trial counsel rendered ineffective
assistance in failing to request this jury instruction at trial.
Further, Petitioner argues that the trial court misapplied
Strickland based on the evidence presented at the evidentiary
hearing. MOL at 26-28. Petitioner also argues that the trial
court made its own findings at the conclusion of the evidentiary
hearing in error. Id. at 28.

In Response, Respondent argues that Florida Rule of Criminal
Procedure 3.215(c) "is triggered only when there is a prior
adjudication of incompetency or restoration, or when a defendant
exhibits inappropriate behavior and it is shown that the
inappropriate behavior is a result of psychotropic medication."
Response at 14 (citing Alston v. State, 723 So. 2d 148 (Fla.
1998)). Thus, Respondent argues that trial counsel cannot be
deemed ineffective for not moving the trial court to give this jury
instruction because Petitioner did not satisfy this criteria.
Respondent refers the Court to the testimony elicited during the
trial court's evidentiary hearing on Petitioner's Rule 3.850 motion

and argues that the trial court's decision to deny relief was not
contrary to Strickland. Id. at 14-15. In Reply, Petitioner
maintains that his demeanor from taking the medications[4] during
trial required the Rule 3.215(c) jury instruction. Reply at 5. As
discussed above, Petitioner raised this claim in his Rule 3.850
motion.

At the evidentiary hearing, both of Petitioner's defense
attorneys and Petitioner's psychologist testified. Exh. 12 at 784.
The post conviction trial court[5] entered an order denying
Petitioner's motion and relief on this ground, noting:

> Counsel representing [Basile] during the evidentiary
> hearing admitted that he was not suggesting that [Basile]
> was incompetent to proceed to trial. Rather, counsel
> argued that [Basile's] trial attorneys were ineffective
> in failing to request a jury instruction advising that
> [Basile] was on medication pursuant to Fla. R. Crim. P.
> 3.215. However, no evidence was offered which might
> suggest that, under the prescribed doses, the medications
> prescribed caused [Basile] any adverse side effects which
> would have affected his ability to assist in his own
> defense or testify on his own behalf. The Court finds
> that, since [Basile's] competency was never at issue and
> since there was no evidence that [Basile] exhibited any
> abnormal or unusual behavior, a jury instruction pursuant
> to Rule 3.215 would not have been appropriate. Even
> though [Basile] may have appeared nervous, scared, or
> detached, this would not be unusual under the
> circumstances. In addition, even though [Basile] claimed
> he took more medication than prescribed during the trial,
> he admitted that he did not advise his trial attorneys of

---

[4]According to Petitioner, the medications included Xanax, which
is used to treat anxiety disorders, and Effexor XR, which is used
to treat major depression, as well as generalized anxiety
disorders. Reply at 7.

[5]Judge Nelson, who presided over Petitioner's trial, also
presided over the evidentiary hearing.

> this fact. [Basile] suggest[ion] that his trial testimony came across as "flat" because he had over-medicated himself, does not logically lead to the conclusion that his trial attorneys were ineffective.

Exh. 12 at 786.  The appellate court *per curiam* affirmed the trial court.  Exh. 16.

The Court agrees with the Respondent and finds the trial court's decision was neither contrary to federal law, nor did it involve an unreasonable application of facts to the law.  As noted by the trial court, Petitioner's competency was never at issue during the trial and nothing occurred during trial to direct attention to any abnormal behavior of Petitioner.  See Peavy v. Sec. Dept. of Corrections, Case No. 8:05-cv-1985, 2007 WL 1812612 *4 (M.D. Fla. 2007)(citing Alston, 723 So. 2d 148).[6]  Trial counsels' performance cannot be deemed ineffective when counsel had no basis to request a Rule 3.215(c)(2) jury instruction.  Neither of Petitioner's defense attorneys during trial found a reason for this motion.  Further, Petitioner's reliance on Riggins v. Nevada,

---

[6]In Alston, 623 So. 2d at 157-158, the Florida Supreme Court agreed with the trial court's denial of defense counsel's Rule 3.215 motion for a jury instruction advising the jury that the defendant was taking pyschotropic medication.  Id. at 157.  The trial court initially deferred ruling on defense counsel's motion, stating that the court would wait to rule "to see what type of behavior [the defendant] exhibited at trial."  Id.  Defense counsel later moved the trial court for the instruction, but the trial court denied the motion, stating "I [the judge] have kept an eye on [the defendant] throughout the proceedings, and I have not seen any bizarre or inappropriate behavior.  I'm looking for it, as I indicated earlier, and he's just showing normal range of reactions of a person accused of a crime. . . ."  Id.

504 U.S. 127 (1992) does not support his argument as <u>Riggins</u> is clearly distinguishable from the facts in the case *sub judice*.[7] Petitioner is denied relief with regard to this claim.

The Court also finds Petitioner's argument concerning the trial judge's statements at the conclusion of the evidentiary hearing inconsequential.  Petitioner argues that the trial judge's recollection of Basile's demeanor during trial at the conclusion of the evidentiary hearing was inappropriate because the judge was not subject to cross-examination.   MOL at 28-29; Reply at 9-10. However, as set forth above, the trial judge entered an order denying Petitioner relief on this claim based on the evidence presented only during the evidentiary hearing.  <u>See</u> Order at Exh. 12; Evidentiary hearing transcript, Exh. 11 at 777-778.  The Court cannot discern any federal violation arising from the trial judge's comments at the close of the evidentiary hearing--specifically that the judge was present at trial and if he had noticed Petitioner was "out of sorts," then he would have stopped the trial at that time. Exh. 11 at 777.

---

[7]The case relied on by Petitioner, <u>Riggins</u>, involved a mentally ill defendant who was <u>forced</u> to take Mellaril, an antipyschotic drug, during the course of his trial for his safety and for others' safety.  <u>See</u> <u>generally</u> 504 U.S. at 127.  Riggins argued that he had a right to show his true mental state at trial because he was raising an insanity defense.  <u>Id.</u> at 130.  Further, during trial Riggins presented expert testimony concerning the effect of the drug on his demeanor, which the court found "did nothing to cure the possibility" that his demeanor during trial was compromised by the <u>forced</u> administration of the drug.  <u>Id.</u> at 137-138.

**C.   Trial counsel rendered ineffective assistance in failing to communicate a plea offer to Petitioner prior to trial**

Petitioner argues that he is entitled to a new trial because defense counsel did not communicate a plea offer to him and had the offer been communicated, he would have taken the plea.  Petition at 7; MOL at 33-34.  Petitioner states that Florida Rule of Criminal Procedure 3.171(c)(2)(A) requires that defense counsel to advise a criminal defendant of all plea offers made by the State.  MOL at 33.   Thus, Petitioner argues that the failure to abide by Rule 3.171(c)(2)(A) amounts to ineffective assistance of counsel.  Id. Further, Petitioner states "defense counsel Ahlbrand testified during the postconviction evidentiary hearing that 'the State ended up filing second degree because we could not reach an agreement that he would plead to five years in prison.'"  Reply at 12 (citing Exh. 11 at 758).

Respondent asserts that defense counsel did not render ineffective assistance of counsel because the record shows no plea agreement was ever offered by the State to the defense.  Response at 16-17.  Respondent refers the Court to the trial court's order denying Petitioner's Rule 3.850 motion on this ground and further argues that the trial court's decision was not an unreasonable determination of facts in light of the evidence.  Id. at 17. Petitioner raises no further argument in his Reply, other than what is included in the memorandum of law.  Reply at 11-12.

In denying Petitioner's Rule 3.850 motion on this issue, the trial court found:

> Defendant has failed to demonstrate that trial counsel failed to communicate a plea offer. Trial counsel testified that there were plea discussions early in the proceedings, but an actual plea offer was <u>never</u> <u>extended</u> by the State. No evidence was offered which would demonstrate that a plea offer was, in fact, offered by the State.

Exh. 12 at 785 (emphasis added). The appellate court *per curiam* affirmed the trial court. Exh. 16.

The Court agrees with Respondent and finds that the trial court's determination neither violates federal law, nor is it an unreasonable determination based on the facts. Contrary to Petitioner's quote of defense counsel suggesting that the State extended a plea offer, during the evidentiary hearing defense counsel <u>specifically</u> stated that he told Basile and/or his family, prior to the arraignment hearing, "we [the State and defense counsel] had <u>no</u> agreement, <u>no</u> guarantee, but that a five-year prison sentence <u>appeared</u> to be at the lower end of what they [the State Attorneys] were willing to discuss." Exh. 11 at 679-680, 683, 691, 692, 700 (emphasis added). Defense counsel again stated that "[t]here was no plea offer extended by the State." <u>Id.</u> at 692. Further, with regard to plea discussions, co-defense counsel testified that "[o]nce [he] got into the case, there were none." <u>Id.</u> at 710. The trial court found credible defense counsel's testimony on this matter and denied Petitioner's Rule 3.850 motion

on this claim.  A factual determination made by a state court is presumed to be correct.  28 U.S.C. § 2254(e)(1); <u>Martin v. Kemp</u>, 760 F.2d 1244, 1247 (1985)(citing <u>Townsend v. Sain</u>, 372 U.S. 293, 309 (1963))(stating that factual issues include "basic, primary, or historical facts," such as external events and credibility determinations).  Petitioner has not rebutted this presumption by clear and convincing evidence.  Petitioner is denied relief on this ground.

**D.  Trial counsel rendered ineffective assistance in failing to move the trial court for a downward departure of the sentencing guidelines**

Petitioner argues that trial counsel should have moved the trial court for a downward departure of the sentencing guidelines and the failure to do so constituted ineffective assistance of counsel. Petition at 7.  In pertinent part, Petitioner argues that evidence presented during the trial would have supported counsel's motion for a downward departure in the sentence, but counsel did not do so.  MOL at 35.  Specifically, evidence was presented during the course of the trial that the crime was committed in an unsophisticated manner and was an isolated incident for which Basile felt remorse.

In Response, Respondent refers to the trial court's finding after its evidentiary hearing and argues that the trial court's findings are supported by the record.  Response at 18-19. Respondent argues that Petitioner has not presented clear and

convincing evidence that the state court's ruling was based on an unreasonable determination of facts in light of the evidence presented.  Id. at 19.  In Reply, Petitioner again sets forth the evidence he believes supported a downward departure under the State's sentencing guidelines, which was presented during the course of the trial.  Reply at 13-14.

The trial court adjudicated this claim on the merits after holding an evidentiary hearing.  In denying Petitioner relief on this ground, the trial court found:

> [T]rial counsel testified that, in his experience, it was not probable that the Court would have granted a downward departure sentence, and, as such, the strategy was to focus on convincing the Court to sentence Defendant to the low-end of the guidelines.  Defendant has failed to demonstrate that this strategy was unreasonable or that there was any likelihood of obtaining a downward departure sentence.

Exh. 12 at 786.  The appellate court per curiam affirmed the trial court's denial of Petitioner's Rule 3.850 motion.  Exh. 16.

In pertinent part, during the evidentiary hearing defense counsel testified that rather than seeking a downward departure in the sentence, their strategy was to request a sentence at the lower end of the guidelines.  Exh. 11 at 722-23; Exh. 12 at 786.  Both of Petitioner's defense counselors believed that they should argue for the lower end of the sentencing guidelines.  Moreover, this tactical decision by the attorneys cannot amount to ineffective assistance.  See McNeal, 722 F.2d at 676.  Petitioner also has not established that the result of the proceeding would have been

-24-

different had counsel argued for a downward departure in the sentence. In particular, the judge presiding over the postconviction hearing, who was also the judge presiding over the trial, found that counsel did not establish that it was likely that Petitioner would have obtained the downward departure. Upon review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on this claim because the state courts' adjudications of this claim were not contrary to clearly established law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is denied relief on this ground.

**Ground Two**

Petitioner argues that he was denied due process during the State evidentiary hearing on his Rule 3.850 motion held before the State trial court. Petition at 7-8. Specifically, Petitioner contends that after both parties rested, counsel requested that the trial court permit the parties to submit written closing argument, but the trial court denied the request. MOL at 36. Then, Petitioner states that the trial judge gave each party ten minutes for closing argument. Id. Petitioner contends that the trial judge interrupted counsel for Petitioner during his closing argument and directs the Court to the transcript of the proceedings. Id. Based on the foregoing, Petitioner maintains the

his due process rights were violated during the evidentiary hearing based on the trial judge's actions.  <u>Id.</u>

In Response, Respondent argues that this claim is without merit and also refers the Court to the transcript of the postconviction proceedings.  Respondent argues that the record reveals that Petitioner "had a full and fair opportunity to present witnesses during Petitioner' postconviction evidentiary hearing. The state trial court also gave defense counsel considerable latitude to question witnesses and present argument to fully develop disputed argument."  Response at 19 (internal citations omitted).

The Court finds that Petitioner has not shown that the state court's ruling resulted in a decision that is contrary to or an unreasonable application of clearly established federal law, or that the ruling was based on an unreasonable determination of facts in light of the evidence.  At the conclusion of the post-conviction hearing, counsel for Petitioner reviewed the claims regarding trial counsel's ineffectiveness during the closing argument.  Exh. 11. The issue Petitioner raises *sub judice* involves the judge's statements, after exchanges between counsel for Petitioner and the judge.  In pertinent part:

MR. HARPER: May it please the Court.

THE COURT: You may proceed.

MR. HARPER: Your Honor, I would refer the Court first to Rule 3.215; the effect of adjudication of incompetency to

proceed, and it's also entitled Psychotropic Medication.
And under the section C about psychotropic medication, I
-- it reads; a defendant who,
because of psychotropic medication, is able to understand
the proceedings and to assist in the defense shall not be
deemed incompetent to proceed simply because the
defendant's mental condition is dependent upon such
medication; nor shall the defendant be prohibited from
proceeding solely because the defendant is being
administered medication under the medical
supervision --

THE COURT: I'm familiar with that statute - all right -
that Rule.

MR. HARPER: Okay. But if the defendant proceeds to trial,
the jury is entitled, on motion of counsel, to be charged
with a jury instruction, to be given explanatory
instructions regarding such medication. And that is the
point that we've made here, Your Honor, is that the
defendant is entitled to that jury instruction, and the
lawyers being aware of this medical condition, being
aware of this treatment regimen, and saying so during the
course of this trial, have an obligation to request this
jury instruction and have this issue in front of the
jury, because if you have heard, at least the defendant's
testimony was somewhat flat during the course of this
trial. I would submit that the record in this case is
that it was a -- certainly a close case in the sense of
this; presented to the jury as a Second Degree case, the
jury came back with a lesser included offense. A -- some
lawyers might call that a compromise. The evidence is
what the evidence is, but it's surely evidence that the
theory of the case that was presented by the State was
rejected. And the question is; if this jury instruction
had been given, would the result of the trial have been
different. And that is not an absolute standard; the
standard is would it have probably been different.
     And in the absence of that instruction, which we
have here, I think we can argue that we have jumped over
the first hurdle.
     Under Scrittner v Washington; saying there is
obligation of counsel to know this issue and to request
this instruction. And the record is clear that the Court
just said it wasn't an issue, it didn't happen, counsel
didn't want that instruction; we're over the first
hurdle.

The second hurdle is a little higher, prejudice standard; is there a reasonable probability the result of the trial would have
been different had this instruction been given. And I'd say that the Court has to wrestle with that issue, because you've heard a defendant testify self servingly, but convincingly. I think you can see that the man is injured, definitely is responsible for this tragedy, is not trying to avoid that responsibility, but when you're trying to talk to a jury and say in so many words, I'm responsible –

THE COURT: I was there, counsel.

MR. HARPER: I well understand that. And, you know, to that extent, I'm glad we are in front of you instead of a judge who is not
familiar with this case. But at the same time, it -- looking at the record that I -- I've read and you participated in and created, I think there is good merit to say that this issue of a defendant being flat line medicated to the point that he's, as his doctor says, somewhat detached and not up to his medical -- maximum medical improvement, under the doctor's testimony, that this -- we are not 'trying to say he was intoxicated, we're not trying to say he was incompetent to proceed, but he certainly wasn't himself in the sense of being able to testify.
    And the jury didn't know the difference and the jury wasn't instructed as to the difference, and the jury's entitled to know that this is not quite a normal Michael Basile up here, this is a
Michael Basile who's been taking medication, ladies and gentlemen of the jury, and you're entitled to take that into consideration in
evaluating his testimony.
    And if that had been requested of you, I believe you would have given that instruction. And this defendant was entitled to that instruction and didn't get the benefit of that instruction in this close trial.
    And that's what we are saying gets us over the second hurdle of this case.
    Now, the legal arguments about the plea bargain; those are not good arguments; those aren't good points. I mean, we have got a
record, and the record is what it is. But there is a good argument here to be made about this psychotropic medication.

THE COURT: If that was true, counsel, then every single defendant who loses on an appeal who has some lawyer that's willing to argue something can make the same exact argument.

MR. HARPER: It's just like --

THE COURT: I've been treated at the jail, they gave me drugs at the jail. And this is not the first time, I might add.

MR. HARPER: Well, I don't doubt it, but it's one of these kinds of issues, it's just like this: You are going to be deported and at some point we make a bright rule, if you're going to deport somebody for entering a plea, you've got to advise them of their right.

THE COURT: I don't see the similarity.

MR. HARPER: It's one thing every non-citizen should raise, that issue, as well they should, if they didn't know it when they entered their plea, that they were going to be deported. What's next? The trial judges are going to advise defendants, when you refuse, don't take the stand --

THE COURT: I do that all the time, ask about drugs. Let's get on with it. I'm using your time, so --

MR. HARPER: That's okay; it's a good discussion. You do that because you're a sharp judge. A lot of judges don't do that.

THE COURT: That's not going to help you either.

MR. HARPER: I'm not trying to ingratiate myself. I know best that's the way it's done, when you do your job. The lawyers didn't do the job here. When you bring it their attention, it's their obligation.
        I'm not sayings it's the lawyers' obligation - and that's what that point is about - just like the thing about a downward departure. It isn't your job to see -- they are supposed to do it, they are supposed to argue that to you in spite of somebody's opinion of you being, you know, stuck with the guidelines.
        Don't you try? Don't you say, maybe this is the case? We try, Judge Nelson, and say, you know, this is a different kind of case, Judge Nelson, give this guy a break, and he doesn't do it --

THE COURT: You notice he didn't get the high end of the guideline.

MR. HARPER: Well, at the same time, you can sure say, even, if they hadn't done it, I wouldn't have given him a departure. At the same point --

THE COURT: Never would have happened.

MR. HARPER: Do you still try to do it? And the answer is; good lawyers try to do it, just like good judges advise the defendant of his right to testify before he waives it. Good lawyers advise the defendant of the right to a jury instruction before they waive it. And that doesn't happen here, and it doesn't happen about the medication and it doesn't happen about the downward departure.
        And those are the kinds of points here that, despite the status of the facts here, despite the facts you've heard here, there is a good, solid argument that is still present in this case, and we can get relief on this case without the testimony of the defendant. I -- I feel like it's important for the defendant to testify in this case, but I don't think that testimony is what we need to rely on to say that we're entitled to relief here.

THE COURT: What you're going to get is another bite at the apple.
        Go on.
        You know, it isn't easy to decide this case -- I mean, it is easy to decide the case based on what I heard here.
        I want the record to reflect I'm simply going through the motions. If you think I've made up my mind, you're correct. I have made my mind up. <u>I've heard all the evidence</u>. I know what this is, and I'm simply going through the motions now, allowing you to do your argument for whatever appellate purposes there are. I've heard it. I know what it's about.

MR. UFFERMAN: Your Honor, on that note, if I could ask; we have talked about the record, what the record reflects, would you please take judicial notice of the original trial record?

THE COURT: Absolutely. I think the law requires me to take judicial notice of the trial documents.

Exh. 11 at 769-776 (emphasis added).  At this point, counsel for Petitioner advised the court that if the court's mind is made up, then he will no longer continue with his closing argument.  Id. at 777.  Petitioner argues that the trial judge had "already made up his mind prior to the argument," but the record is clear that the trial judge made his ruling after hearing all of the evidence. Petitioner is denied relief on this ground.

**Ground Three**

Petitioner argues the verdict of manslaughter is contrary to the law and the weight of the evidence and there was insufficient evidence to support the conviction as a matter of law.  Petition at 8.  Specifically, Petitioner argues that in order to sustain a conviction for manslaughter under Florida law, evidence of intent or culpable negligence must be produced during the course of the trial.  Id.  Petitioner argues that "[a]ll of the trial testimony from [his] trial showed that the firearm discharged accidentally." Id.  Thus, Petitioner argues that his federal right to due process has been violated because the prosecution did not prove every element of the offense beyond a reasonable doubt. Id. at 19.

In Response, Respondent directs the Court to the facts presented during the course of the trial.  Response at 20. Respondent argues that, at trial, both forensic evidence and the only other witnesses to the incident contradicted Petitioner's version of the events leading to the death of the victim.  Id. After a thorough review of the evidence presented during the trial,

Respondent further argues, "[w]hile Petitioner argues that '[n]o **testimony** contradicted the accidental shooting,' all of the **evidence** did contract any possibility the shooting was accidental." Id. at 26 (emphasis in original). Respondent states that "[m]anslaughter is defined as '[t]he killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification . . . and in cases in which such killing shall not be excusable homicide or murder, . . . is manslaughter. . . .'" Id. at 26. Respondent asserts that the State presented substantial, competent evidence that the shooting of the victim was an act of manslaughter based on culpable negligence. Id. In summary, Respondent argues that Petitioner has not demonstrated that the state court's ruling resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law, or the ruling was based on an unreasonable determination of facts in light of the evidence. Id. at 26-27.

As discussed previously, Petitioner raised this argument in his direct appeal. Exh. 5. The State filed a brief in response with a thorough review of the evidence introduced during the course of the trial, Exh. 6 at 11-19, and Petitioner filed a reply brief. Exh. 7. The appellate court *per curiam* affirmed. Basile v. State, 780 So. 2d 67 (Fla. 2d DCA 2000)(not an attached exhibit in record); mandate at Exh. 8.

In Jackson v. Virginia, the United States Supreme Court held that, when reviewing the sufficiency of the evidence, the "critical inquiry" is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   Jackson, 443 U.S. 307, 318-319 (1979) (emphasis in original).   It was within the province of the jury to weight the credibility of all of the witnesses' testimony.   Id. at 318-319. As correctly summarized by Respondent, the record contains the following:

> Michael Petrosky testified that Petitioner began waiving and pointing guns at the victim, pulling the trigger "continuously" from the time they [victim and Petrosky] arrived until the fatal shot was fired; a period of some fifteen minutes after they arrived at the Petitioner's house.  The victim told Petitioner to stop pointing the gun at him and the Petitioner disregarded the victim's request, eventually shooting the victim in the back of the head.
>
> The Medical Examiner testified that the fatal bullet entered the victim's head to the back, behind the left ear, traveled downward across the brain and exited just below the right ear at the jawline.  The same bullet then re-entered the victim's right shoulder.  As described by the Medical Examiner the autopsy revealed that at the time he was shot the victim had 'his head bent forward and to the side in contact with his right shoulder.' . . . .
>
> Petitioner testified that immediately upon firing the shot, he dropped the gun. . . . Testimony from Deputy Justin Rowe [sic] observed the gun lying on the floor, not across the table as described by Petitioner, but, by the victim's body.  As one of the first EMT unit members to respond the night of the shooting, Robert Locke was the first to observe the crime scene.  Mr. Locke testified that he observed the gun lying beside the victim's body. . . .

> Billy Hornsby, the firearms expert, [testified] that the gun used to kill the victim had triple safety features. His testimony establishe[d] it was virtually impossible for the weapon to discharge accidently, that it was necessary that the trigger be pulled, while the thumb safety was off, while the grip safety was disengaged by a person gripping the handle of the gun.

Response at 22-25 (internal citations omitted). Based on the record, it is clear that a rational trier of fact could have reached the conclusion that the jury in this case reached. Petitioner is not entitled to relief on this claim.

**Ground Four**

Petitioner argues that the trial court committed constitutional error in failing to grant a mistrial when officer Gossman[8] testified that Petitioner had a warrant for an arrest on an unrelated matter. Petition at 9. The trial court denied defense counsels' motion for a mistrial. Id. Petitioner argues that the officer's "testimony was prejudicial and tantamount to impermissible collateral crime evidence" and as such the trial court's decision to grant the defense counsel's motion for a mistrial was contrary to federal law. MOL at 42 (citing Francis v. Dugger, 908 F.2d 696 (11th Cir. 1990)).

In Response, Respondent argues that the decision whether to grant a mistrial is within the trial court's discretion and according to State law is not subject to reversal unless its an abuse of discretion. Response at 27. Further, under Florida law,

---

[8]While the parties refer to the witness as "Grossman," the transcript refers to him as "Gossman."

"[a] mistrial is appropriate only where the error is so prejudicial as to vitiate the entire trial." Id. (citing Hamilton v. State, 707 So. 2d 1038, 1041 (Fla. 1997)).  Respondent contends that the single, unsolicited comment by Gossman did not vitiate the entire trial.  Id. at 28.  The statement did not become a point of focus at the trial and the trial judge instructed the jury to disregard the statement. Id. at 29.  Thus, Respondent argues that Petitioner has not presented clear and convincing evidence to show that the State court's ruling resulted in a decision contrary to, or involved an unreasonable application of clearly established federal law, or that the ruling was based on an unreasonable determination of the facts.  Id. at 29-30.  In Reply, Petitioner reiterates his argument in the Petition and memorandum of law.  Reply at 21-22.

The transcript of the trial reflects the following sequence while the State was questioning Sergeant Gossman:

> Q: Did you have any other contact with the suspect Michael Basile?

> A: Yes, sir.  Right at the end before I left the scene, our detectives had arrived.  We still had Mr. - - I'm sorry if I mispronounce his name, Mr. Basile. He was still in handcuffs and presumably he wasn't really a threat at that time.  We could have unhandcuffed him. Oddly enough, we did find something on him. I don't know if I can say this or not.  We decided to leave him handcuffed.  And once the detectives arrived, they unhandcuffed him.

> The only conversation I remember having was pertaining to, against, I don't want to hurt anything here, but I was trying to explain to him why he was - - I don't know if I can - he had a warrant for an arrest.

Exh. 2 (pinpoint citation not available).  At this time, defense counsel objected.  Id.  The court sustained the objection and instructed the jury to disregard the statement.  Id.  Defense counsel asked for a sidebar conference.  Id.  At the bench, defense moved for a mistrial.  Id.  The State explained that it did not know Gossman was going to say the statement.  Id.  The trial judge said:

> Let me tell you, I don't think it rises to the level of a mistrial.  He said warrant, and that doesn't mean anything particularly.  It's not only in [sic] true violation as I can see.  I've instructed the jury-- I've sustained your objection and instructed the jury to disregard.  We are going to leave it at that.

Id.  Petitioner raised this issue on direct appeal, Exh. 5.  The State filed a brief in response, Exh. 6, and Petitioner filed a reply brief, Exh. 7.  The appellate court per curiam affirmed. Basile v. State, 780 So. 2d 67 (Fla. 2d DCA 2000)(not an attached exhibit in record); mandate at Exh. 8.

The Court finds that Petitioner does not show that the state courts' ruling resulted in a decision contrary to, or involved an unreasonable application of clearly established federal law, or that the ruling was based on an unreasonable determination of the facts in light of the evidence.  The cases on which Petitioner relies, such as Truman v. Wainwright, 514 F.2d 150 (5th Cir. 1975), are distinguishable from the facts *sub judice*.  It is true that a "witness may not be impeached by inquiry into specific acts of misconduct not resulting in a conviction."  See, e.g., Truman, 514

F.2d at 152 (citations omitted).  Here, the State did not intentionally elicit the testimony, nor does it appear that the State attempted to impeach the witness.  Instead, on direct examination, the officer vaguely references that officers kept Basile handcuffed and tried to explain to Basile that he had an arrest warrant.  The trial judge then instructed the jury to disregard the statement.  In the context of the question asked and what Gossman stated, the Court does not find that the state courts' decision resulted in a violation of federal law.  Petitioner is denied relief with regard to this ground.

**Ground Five**

Petitioner argues that the trial court committed an error when it failed to grant a mistrial when a State's witness testified that he had taken a polygraph.  Petition at 9.  Petitioner submits that when witness Pietrosky "gratuitously offered that he took a lie detector test," "the only possible implication of that statement, within its context, was that he had passed the test and he was telling the truth."  Petition at 10.  Petitioner further argues that Pietrosky was improperly bolstering his own credibility.  MOL at 44.  Petitioner refers the Court to the trial transcript, specifically Pietrosky's testimony, and argues that the trial court's decision was contrary to and an unreasonable application of federal law as polygraph evidence is inadmissible in court.  Id. at 43 (citing United States v. Hilton, 772 F.2d 783, 785 (11th Cir. 1985)).

In Response, Respondent states that a Florida court's decision on a motion for mistrial is within the discretion of the trial judge and should only be granted in absolute necessity.  Response at 31.   Based on the nature of Pietrosky's comment and circumstances of the case, Respondent argues that a mistrial was not necessary.  Id.  Respondent explains that Pietrosky was not a co-perpetrator; he was a witness, but not the State's "primary" witness.   Id.   Further, Respondent asserts that Pietrosky repeatedly testified that the Petitioner's shooting of the victim was an "accident."  Id.  Thus, Respondent argues that Petitioner has not presented clear and convincing evidence to show that the state court's ruling resulted in a decision that was contrary to or an involved an unreasonable application of federal, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented.  Id. at 32.

Petitioner raised this claim on direct appeal.  Exh. 5.  The State filed a brief in response, Exh. 6, and Petitioner filed a Reply, Exh. 7.  The appellate court *per curiam* affirmed.  Basile v. State, 780 So. 2d 67 (Fla. 2d DCA 2000)(not an attached exhibit in record); mandate at Exh. 8.

The Court concludes the state court's ruling did not result in a decision that was contrary to or involved an unreasonable application of federal, or that the ruling was based on an unreasonable determination of the facts in light of the evidence.

In summary, the transcript reflects the following occurred during the State's direct examination of Pietrosky:

> Q:  Do you recall how many statements you've given in regards to this case?
>
> A:  I believe three.
>
> Q:  Do you remember to whom?
>
> A: One to the police officers that night, another one with a polygraph.

Exh. 2, Vol. 2 (pinpoint citation not identified on document).  At this point, defense counsel objected and a bench conference occurred.  Id.  Defense counsel moved for a mistrial and argued that Pietrosky's statement was inadmissible because Pietrosky may have passed the polygraph.  Id. (emphasis added).  As previously discussed, the trial court denied defense counsel's motion.  Id.  Indeed, as Petitioner argues, the law is well settled in this circuit "[t]hat the results of a polygraph test are inadmissible into evidence[,]" as is evidence regarding a witness' willingness to submit to a polygraph.  United States v. Hilton, 772 F.2d 783, 785 (1985).  If this evidence is presented, then the question is whether the error affected one's substantial rights.  Id. at 786.

Here, the State posed a general question on direct examination regarding and the witness stated that he had provided a statement "with a polygraph."  Unlike Hilton, the case here involved no further discussion of the polygraph, or the results of the polygraph.  The State did not suggest that Pietrosky's testimony was credible because he submitted to a polygraph.  See also Albury

-39-

v. State, 835 So. 2d 1208, 1209 (Fla. 4th DCA 2003)(recognizing that results of polygraph are inadmissible as evidence, but distinguishing that whether the reference requires a new trial depends on whether the jury can infer that the witness had taken or passed the test).  The results of Pietrosky's polygraph were never mentioned.   Moreover, Pietrosky's testimony set forth that he believed Petitioner accidentally shot the victim and never accused Petitioner of murder.  Based on the foregoing, Petitioner is denied relief with respect to this ground.

**Ground Six**

Petitioner argues that the trial court committed constitutional error by not granting defense counsel's request to instruct the jury on the lesser offense of "using a firearm while under the influence of alcoholic beverages."   Petition at 10. Petitioner argues that under federal law:

> To establish that the district court erred in refusing to give the lesser included offense instruction, Defendant must satisfy a two-part test.  First, he must show that the charged offense encompasses all of the elements of the lesser offense (the "elements" test).  Second, he must establish that the district court abused its discretion in failing to give the instruction.  An abuse of discretion may occur where the evidence would permit the jury rationally to acquit the defendant of the greater, charged offense and convict him of the lesser.

MOL at 46-47 (citing United States v. Williams, 197 F.3d 1091, 1095-96 (11th Cir. 1991)).  Petitioner argues that the "charged offense encompassed all of the elements of the lesser offense and the evidence would have permitted the jury to rationally acquit

-40-

Petitioner Basile of the greater charged offense and convict him of the lesser offense." Id. at 47.

Both Petitioner and Respondent refer the Court to Florida Statute 790.151, which provides in relevant part:

> Using firearm while under the influence of alcoholic beverages . . .
>
> (1) . . . to "use a firearm" means to discharge a firearm or have a firearm readily accessible for immediate discharge.
>
> (2) For the purpose of this section, "readily accessible for immediate discharge" means loaded and in the person's hand.
>
> (3) It is unlawful and punishable as provided in subsection (4) for any person who is under the influence of alcoholic beverages . . . when affected to the extent that his or her normal faculties are impaired, to use a firearm in this state.
>
> (4) Any person who violates subsection (3) commits a misdemeanor in the second degree.

Petition at 10; Response at 34 (citing Florida Statute 790.151).

Respondent argues that Petitioner "presented absolutely no evidence at trial he had consumed alcohol to the point that he was "affected to the extent that his . . . normal facilities. . . [were] impaired." Response at 34. Respondent points to pertinent trial testimony, including Basile's own testimony regarding his consumption of alcohol. Id. at 33-34. Thus, Respondent argues "[t]he trial judge properly ruled that the requested instruction was not applicable to the circumstances of the case, stating: '[t]he Court has reconsidered and reread your memorandum and still

feels that its decision was correct.  It doesn't apply.'"  Id. at
34 (citing Exh 2 at 442).

     As previously discussed, Petitioner raised this argument on
direct appeal.  Exh. 5.  The State filed a Response, Exh. 6, and
Petitioner filed a Reply, Exh. 7.  The appellate *per curiam*
affirmed the decision of the trial court.  Basile v. State, 780 So.
2d 67 (Fla. 2d DCA 2000)(not an attached exhibit in record);
mandate at Exh. 8.

     The Court finds that Petitioner is not entitled to relief on
this ground.  The trial court denied defense counsel's motion for
the intoxication jury instruction based on the facts presented.
The trial court's factual finding is presumed to be correct.
Moreover, the record supports the trial court's decision not to
give the requested jury instruction of intoxication.  In
particular, Basile testified that he consumed two beers earlier in
the evening on the date of the incident at a local bar and then
drove home.  Exh. 2 at 362.  Basile arrived home around 10:30 p.m.
Id. at 363.  Basile also testified that the victim and Pietrosky
arrived at his home sometime later with a twelve-pack of beer, but
no evidence was presented that Basile consumed any alcohol.  Exh.
2 at 364.  Based on the evidence presented, the trial court
determined that the instruction was not appropriate.  The Court
does not find that the state court's decision was unreasonable in
light of the facts presented, or that the decision violated federal
law.  As such, Petitioner is denied relief on this claim.

ACCORDINGLY, it is hereby

**ORDERED**:

1.  The Petition (Doc. #1) is **DENIED** with prejudice.

2.  The Clerk of Court shall: (1) enter judgment accordingly;
(2) terminate any pending motions; and (3) close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this __30th__ day
of September, 2008.

_____
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record